*Daniel J. Rylander, P.C.*
*Attorney At Law*
*2701 E. Speedway Blvd., Suite 203*
*Tucson, Arizona 85716*
*Office (520) 299-4922-Fax (520) 299-1482*
*ecf@robrylaw.com*

Daniel J. Rylander
PAN #64969 – Ariz. Bar #15279
Attorney for Debtor

**IN THE UNITED STATES BANKRUPTCY COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| In re: | Chapter 11 case |
| G6 LIMITED PARTNERSHIP, | No. 4:17-bk-12003-SHG |
| Debtor. | **DISCLOSURE STATEMENT FOR CHAPTER 11 PLAN OF REORGANIZATION FILED JULY 9, 2018** |

This Disclosure Statement has been approved by Order of the United States Bankruptcy Court entered on the _____ day of _____, 2018, as containing adequate information of a kind and in sufficient detail to enable a reasonable, hypothetical investor to make an informed judgment concerning the Plan and its distribution to the holders of claims and equity security interest as authorized by that Order. The Bankruptcy Court's approval of this Disclosure Statement, however, does not constitute a recommendation by the Bankruptcy Court either for or against the Plan.

I.    INTRODUCTION

1

A. Purpose of this Disclosure Statement: On October 10, 2017, G6 Limited Partnership , (the "Debtor" or "G6") filed a voluntary bankruptcy petition under Chapter 11 of Title 11, United States Code. G6 now files with the Bankruptcy Court the Plan of Reorganization (the "Plan") and this Disclosure Statement.

B. The purpose of this Disclosure Statement is to provide the holders of claims against the Debtors with information about the Debtors and the Plan so that holders of claims against the Debtors may make an informed judgment on the merits of the Plan and a decision whether to approve or reject the Plan.

C. This Disclosure Statement was prepared from information obtained, from the Debtors' books and records, its Statements, Lists and Schedules on file in this case. All Debtors use the cash-basis accounting method.

THE DEFINITIONS CONTAINED IN THE PLAN OR THE DISCLOSURE STATEMENT APPLY TO THIS DISCLOSURE STATEMENT AND TO THE PLAN AND EACH RECIPIENT THEREOF IS URGED TO REVIEW THE PROVISIONS OF THE PLAN IN FULL PRIOR TO RE¬VIEWING THIS STATEMENT.

D. Confirmation Hearing and Voting Instructions. The Bankruptcy Court has set a hearing on the confirmation of the Plan. Notice of the time, date and place accompanies this

2

Disclosure Statement.  Claimants and interest holders may vote on the Plan by filling out and mailing the accompanying Ballot for Accepting or Rejecting the Plan to the attorney for the Debtors, Daniel J. Rylander, 2701 E. Speedway STE 203, Tucson, Arizona  85716.  The Court may confirm only one Plan in this case.  The Plan confirmed in the Bankruptcy Court must meet the requirements contained in the Bankruptcy Code.  As a claimant, your vote is important.  The Court cannot consider confirmation of the Plan until acceptance thereof has been obtained pursuant to the affirmative vote of impaired claimants by classes who hold at least two-thirds (2/3) in amount and more than one-half (1/2) in number of the allowed claims by class voting on the Plan.  If an impaired claimant who is entitled to vote does not vote, such failure to vote will not bear upon the outcome. Following acceptance, the Bankruptcy Court will hold a hearing on the confirmation of the Plan and will enter an Confirmation Order with respect to the Plan if it finds that, among other things, all payments to be made by the Debtors in connection with the case or Plan have been disclosed to the Court, the identity and affiliation of post-confirmation management of the Reorganized Debtors have been fully disclosed, each class of claimants has accepted the Plan or is not impaired by the provisions thereof, and that confirmation is not likely to be

3

followed by the liquidation or need for further financial reorganization of the Reorganized Debtors.

E.    In the event that the requisite acceptance of impaired classes of claims and interest are not obtained, pursuant to §1129(b)(1) of the Code, the Bankruptcy Court may nevertheless confirm the Plan upon the request of the proponent of the Plan if the Bankruptcy Court finds that the Plan does not discriminate unfairly and accords fair and equitable treatment to the class rejecting it.

F.    Approval of this disclosure statement does not constitute certification by the Court that the disclosure statement is without inaccuracy.

G.    At the hearing on Confirmation of the Plan, the Bankruptcy Court will hear any timely filed objection to confirmation of the Plan, from any claimant holder.

NO REPRESENTATIONS CONCERNING THE DEBTORS' FINANCIAL CONDITION, THE PLAN, OR THE FUTURE INCOME OF THE DEBTORS ARE AUTHORIZED BY THE DEBTORS OTHER THAN AS SET FORTH IN THIS AMENDED DISCLOSURE STATEMENT.  ANY REPRESENTATIONS OR INDUCEMENTS MADE TO SECURE ACCEPTANCE OF THE PLAN THAT ARE OTHER THAN THOSE CONTAINED IN THIS AMENDED DISCLOSURE STATEMENT SHOULD NOT BE RELIED ON BY ANY CLAIMANT IN REACHING A DECISION.  THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT HAS NOT BEEN

4

SUBJECTED TO A CERTIFIED AUDIT.  FOR THAT REASON, THE DEBTORS IS NOT ABLE TO WARRANT OR REPRESENT THAT THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT IS WITHOUT INACCURACY.  HOWEVER, GREAT EFFORT HAS BEEN MADE TO ENSURE THAT ALL SUCH INFORMATION IS FAIRLY PRESENTED.

    II.  HISTORY OF THE DEBTOR AND PERTINENT EVENTS LEADING TO THE CHAPTER 11 AND EVENTS SUBSEQUENT TO THE FILING OF THE CHAPTER 11 CASE

    The Debtor is a limited partnership created pursuant to the October 24, 1996 Agreement of Limited Partnership by and between EME Management Group, LLC, an Arizona Limited Partnership and Ernest L. and Mary Ellen Graves, husband and wife.

    G6 has been engaged in business in Arizona since October, 1996.  Its business is entirely involved in owning various real estate assets.  The assets of the Debtor are detailed below.

    G6 acquired Rancho del las Rochas, approximately 1,050 acres and grazing leases located at the mailing address of 2350 N. 4Y Ranch Rd., Dragoon, Arizona (the "Property" as defined in this Disclosure Statement) from Barbara McGoffin Owens Revocable Trust by Barbara Owens, trustee  (the "Owens Trust") on January 7, 2015 for $2.5 million.  Part of the purchase price was a "carry-back mortgage" to the Owens Trust in the amount of $1.25 million.

G6 was unable perform its obligations to the Owens Trust and a trustee's sale of the Property was scheduled. The Debtor's Chapter 11 petition stayed the Owens Trust from conducting that sale.

The Debtor has been attempting to sell the Property since August 22, 2017 when the Property was first listed for sale with First United Realty, Inc. and Hall & Hall Partners.

The Debtor has received an offer to sell the Property for $10.2 million but the buyer has as of yet been unable to perform.

III. ASSETS OF THE DEBTORS

The Debtors' assets are listed and are summarized in the attached Exhibit A.

The values of the Debtor's property is based on the best estimate of the Ernest Graves, the principal of the G6, except as otherwise indicated on Exhibit A.

IV.  LIABILITIES OF THE DEBTORS

The following tables describe how creditors were listed by the Debtors in their schedules of liabilities.

**DESERT FUN FOODS, LLC SCHEDULED CREDITORS**

*Secured*

| <u>Creditor</u> | <u>Collateral</u> | <u>Scheduled amount due</u> |
|---|---|---|

6

| Barbara McGoffin Owens Revocable Trust | The ranch Property | 1,250,000 |
| Cochise County Treasurer | The ranch Property | 2,500 |

***Unsecured***

| **Creditor** | **Scheduled amount due** |
| Charles Johnston Family Exempt Trust | 300,000 |
| D. Fenn Enterprises, Inc., | 30,000 |
| Ernest L. Graves Mary Ellen Graves | 12,000 |
| Ernest L. Graves Mary Ellen Graves | 112,000 |

V.   LITIGATION

Non-bankruptcy litigation

There is no relevant non-bankruptcy litigation pending or that could be commenced.

Bankruptcy litigation

There is no relevant non-bankruptcy litigation pending or that could be commenced.

VI.  AFFILIATES OF THE DEBTORS

Except that G6 is 99% owned by the Ernest L. and Mary Ellen Graves, the Debtor has no affiliates.

VII. SUMMARY OF THE CHAPTER 11 PLAN OF REORGANIZATION

7

In accordance with 11 U.S.C. Section 1122, all claims against the Debtors are classified and treated as follows:

A.  Class 1: Allowed Administrative Claims.

Class 1 shall consist of allowed administrative costs and expenses, the attorney's fees and costs for all Debtor associated with Plan confirmation and associated claims litigation, and the fees and costs for and any unpaid post-petition taxes or quarterly fees of the United States Trustee. These claims will be paid in full on the Effective Date of the Plan or shall be paid in installments as agreed by the holder of any such claim. The Debtor estimates that attorney's fees and costs will total approximately $15,000 this case of which amount $6,587.54 has been paid.

B.  Class 2: Allowed Priority claims of governmental units.

1.  Classification:  Class 2 consists of Allowed Claims by local, state and federal governmental taxing authorities.  The Debtor believes there are no Class 2 claims.

C.  Class 3: Allowed Secured Claim of Barbara Owens, Trustee.

1.  Classification:  Class 3 consists of Allowed Secured Claim asserted against the Debtor and the Property by Barbara McGoffin Owens Revocable Trust by Barbara Owens, trustee on the

8

Property.  The Debtor believe and are informed that the Class 3

creditor is owed $1,250,000, plus interest, costs and reasonable

attorney's fees all of which is  fully secured by the

collateral.

2.    Impaired: Class 3 is impaired.

3.    Treatment: Under §506 of the Bankruptcy Code, a

secured creditor has a secured claim to the extent of the

creditor's interest in the Debtor's interest in the collateral

and an unsecured claim for the balance, if  any, unless the

creditor, if eligible, elects to have its claim treated as fully

secured. The Class 3 claim shall not be modified by this plan

and shall paid in full from the Sale of the Property.

D.    Class 4: Allowed Secured Claims of Cochise County

Treasurer.

1.    Classification:  Class 4 consists of Allowed Secured

Claim asserted against the Property by Cochise County Treasurer

for real property taxes on the Property in the approximate

amount of $2,500.

2.    Impaired: Class 4 is impaired.

3.    Treatment: Under §506 of the Bankruptcy Code, a

secured creditor has a secured claim to the extent of the

creditor's interest in the Debtor's interest in the collateral

and an unsecured claim for the balance, if  any, unless the

creditor, if eligible, elects to have its claim treated as fully

secured.  The Class 3 claim shall not be modified by this plan

and shall paid in full from the Sale of the Property.

E.  Class 5:  General Unsecured Creditors class

1.  Classification:  Class 5 shall consist of all Allowed

Unsecured Claims against all of the Debtor, including tax claims

not entitled to priority, if any, the claims of trade creditors,

judgment creditors and any general unsecured claim whose claims

are allowed.  The Debtor estimates that this class is owed over

$454,000.

2.  Impaired:  Class 5 is impaired.

3.  Treatment:  The Debtor shall pay Class 5 claims in

full from the Sale of the Property.

F.  Class 6:  Equity Interest in the Debtor.

1.  Classification:  Class 6 consists of the equity

security interests of Ernest L. and Mary Ellen Graves (99%) and

EME Management Group, LLC (1%) in the Debtor.

2.  Impaired:  Class 6 is unimpaired.

Treatment: Class 6 claimants shall retain their equity

interest in the Debtor.  The Debtor is aware of the absolute

priority rule but asserts that as this is a full payment plan,

the Plan is in compliance.

VIII.    LIQUIDATION ANALYSIS

The Debtor believes that liquidation is not in the best interest of parties in interest.

Pursuant to the provisions of the Bankruptcy Code providing for Court approval of a Plan of Reorganization, Debtors are required to pay creditors at least as much as creditors would receive in a Chapter 7 liquidation case, after costs of administration and the liquidation of the Debtors' assets. 11 U.S.C §1129(a)(7)(ii).

Even though the Debtor's Plan is a full payment plan, a Liquidation Analysis is attached hereto as Exhibit B. The Liquidation Analysis represents an estimate of recovery based upon hypothetical liquidation assumptions whereby a Chapter 7 Trustee would liquidate the Debtors' assets to convert assets to cash and settle claims. The determination of the hypothetical proceeds from the liquidation of assets is an uncertain process involving the use of estimates and assumptions that, although considered reasonable, are inherently subject to business, economic and competitive contingencies beyond the control of the Debtors.

All administrative claims in the chapter 11 case would be entitled to priority over the general unsecured claims, but would remain subordinate to the administrative claims incurred in the administration of the Chapter 7 estate.

The Plan, summarized herein, will pay all Allowed Claims in full.

IX.   MEANS FOR EXECUTION OF THE PLAN

A.   The Debtors will provide for payment of all timely filed and allowed claims as described in the Plan Summary. The source of funding for claims will be the sale of the Property. The Debtor will sell through an auction of the Property to be conducted by Hall & Hall on October 4, 2018 unless an individual buyer performs on the existing offer of $10.2 million. The Debtor believes that the Plan is feasible.

X.   ADMINISTRATIVE EXPENSES

The Debtors estimate that administrative expenses in this case will be the Debtors' attorney fees and costs associated with Plan confirmation and associated claims litigation, and the fees and any unpaid post-petition taxes or quarterly fees of the United States Trustee. These claims will be paid in full on the Effective Date of the Plan.  It is estimated that such amounts will not exceed $15,000 for all attorney's fees incurred by the Debtor in this case.

XI.   POST CONFIRMATION MANAGEMENT

G6 will be operated by its principal, Ernest L. Graves.

XII. POST CONFIRMATION FINANCIAL REPORTS AND FEES

The Debtors shall file post-confirmation financial reports on a quarterly basis as required by law. Copies of such reports shall be provided to the United States Trustee.

The Debtors shall pay post-confirmation quarterly fees to the United States Trustee as required by law.

XIII.    ACCEPTANCE AND CONFIRMATION

A.    Acceptance.    As a condition to confirmation, the Bankruptcy Code requires that each impaired class of claims accept the Plan, with the exceptions described in the following section. The Code defines acceptance of a plan by a class of claims as acceptance by holders of two-thirds (2/3) in dollar amount and a majority in number of claims of that class, but for that purpose counts only those who actually vote to accept or to reject the plan. Thus, holders of claims who fail to vote are not counted as either accepting or rejecting the plan.

B.    Classes of claims that are not impaired under a plan are deemed by the Code to have accepted the Plan. Acceptances of the Plan are being solicited only from those persons who hold claims in impaired classes. A class is impaired if the legal, equitable or contractual rights attaching to the claims of that class are modified, other than by curing defaults and reinstating maturity or by payment in full in cash.

C.   Confirmation Without Acceptance By All Impaired
Classes.

1.   Classes.   The Bankruptcy Code contains provisions for
confirmation of a plan even if the plan is not accepted by all
impaired classes, as long as at least one impaired class of
claims has accepted the plan.   These "cram-down" provisions for
confirmation of a plan despite the non-acceptance of one or more
impaired classes of claims are set forth in §1129(b) of the
Code.

2.   If a class of unsecured claims rejects the Plan, it
may still be confirmed so long as the Plan provides that (i)
each holder of a claim included in the rejecting class receive
or retain on account of that claim property which has a value,
as of the Effective Date, equal to the allowed amount of such
claim; or that (ii) the holder of any claim that is junior to
the claims of such class will not receive or retain on account
of such junior claim any property at all.   The Debtors believe
that the Plan meets this test as to all of the impaired classes.

3.   Whether a creditor votes on the Plan or not, or
whether the creditor votes at all, such party will be bound by
the terms and treatment set forth in the Plan if the Plan is
accepted by the requisite majority of creditors and is confirmed
by the Bankruptcy Court.   Absent some affirmative act

14

constituting a vote, such creditor will be included in the voting tally as having accepted the Plan. See, In re Ruti-Sweetwater, Inc., 836 F.2d 1263 (10th Cir. 1988). Allowance of a claim or interest for voting purposes does not necessarily mean that all or a portion of the claim or interest will be allowed or disallowed for dis¬tribution purposes.

4.    Absolute priority rule compliance. The Debtor's plan complies with the absolute priority rule since it is a full payment plan.

D.    Alternatives to the Plan.

1.    The Debtors believe that the Plan provides the creditors with the earliest and greatest possible value that can be realized from their claims. The alternatives to confirmation of the Plan are the submission of an alternative Plan by the Debtors or any other party in interest.

2.    Alternatively, a liquidation of the Debtors could be conducted. The Debtors believe that the distributions to each impaired class under the Plan will be greater and earlier than distributions that might be received after a Chapter 7 liquidation of the Debtors.

3.    The Debtors believe that confirmation of the Plan is preferable to the alternatives described above because the Plan

maximizes the allowability of distributions to unsecured

creditors.

XIV. TAX CONSEQUENCES

A.    The Debtors have not obtained a tax opinion and

expresses no opinion as to the tax consequences to the holder of

any claim or interest caused the Terms of the Plan.

B.    Because the Debtors do not express any tax advice, in

no event will it, or any affiliated or professional advisors

engaged by them, be liable for tax consequences of this Plan.

Creditors and interest holders must look solely to and rely upon

their own advisors as to the tax consequences of this Plan.

XV.    RECOMMENDATION OF THE DEBTORS

A.    The Debtors recommend that the Plan of Reorganization

be approved since, it is the plan most likely to generate the

largest dividend to unsecured creditors.    The Debtors are of the

opinion that the Plan approval is in the best interest of all

creditors and parties in interest.

XVI. CONCLUSION

A.    The materials provided in this Disclosure Statement

are intended to assist in voting on the Plan in an informed

fashion.    If the Plan is confirmed, each creditor and other

parties in interest will be bound by the terms of the Plan;

therefore, all creditors and other parties in interest are urged

16

to review this material and to make such further inquiries as

deemed appropriate, and then cast an informed vote on the Plan.

      DATED this July 9, 2018.

<div style="margin-left:40%">

_/s/ Daniel J. Rylander_____
DANIEL J. RYLANDER
DANIEL J. RYLANDER, P.C.
Attorney for Debtor

</div>

Approved:
G6 Limited Partnership


By: /s/ *Ernest L. Graves* _____
    Ernest L. Graves
    Manager of EME Management Group, LLC, general partner
    Debtor

# EXHIBIT A

### G6 LIMITED PARTNERSHIP ASSETS

| Asset | Scheduled Value | Basis for Valuation |
|---|---|---|
| Northern Trust bank account | 3,500 | Dollar value |
| Accounts receivable | 154,000 | Debtor's books and records |
| 48% ownership of New Whetstone Holdings, LLC | 485,000 | Debtor's best estimate |
| 2350 N. 4Y Ranch Road, Dragoon, AZ 85609 consisting of approximately 1,050 acres near Texas Canyon and 147.72 acres State of Arizona grazing lease and 365 acres Bureau of Land Management grazing lease (the "Property") | 7,900,000 | Debtor's best estimate |
| Other investments | 43,429 | Debtor's books and records |
| Apache Peak Investments, LLC | 81,939 | Debtor's best estimate |

# EXHIBIT B

Liquidation Analysis

| Asset | Scheduled Value | Liquidation Value | Lien(s) | Available for Creditors |
|---|---|---|---|---|
| ***REAL PROPERTY*** | | | | |
| The ranch Property | 7,900,000 | 5,000,000 | 1,250,000 | 3,750,000 |
| ***PERSONAL PROPERTY*** | | | | |
| Bank Accounts | | | | |
| Checking | 3,500 | 3,500 | 0 | 3,500 |
| Accounts receivable (est. 90% collectible) | 154,000 | 138,600 | 0 | 138,600 |
| 48% ownership of New Whetstone Holdings, LLC | 485,000 | 485,000 | 0 | 485,000 |
| Apache Peak Investments, LLC | 81,939 | 81,939 | 0 | 81,939 |
| **Total** | | | | **4,459,039** |